IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN M., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 22-cv-191 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Brian M. ("Claimant") brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIBs"). The Commissioner brings a cross-motion for summary judgment seeking to uphold the prior decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion for summary judgment, (Dckt. #13), is granted and the Commissioner's cross-motion for summary judgment, (Dckt. #14), is denied.

**I.  BACKGROUND**

    **A.  Procedural History**

On December 4, 2019, Claimant (then 50-years old) filed his application for DIBs alleging disability dating back to November 12, 2019, due to limitations stemming from a back injury, issues with nerves in his arms and legs, torn tendons in his elbows, and bowel problems.

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

(Administrative Record ("R.") 15, 205). Claimant's date last insured is December 31, 2024. (R. 17). His application was denied initially and upon reconsideration. Claimant filed a timely request for a hearing, which was held on May 13, 2021, before Administrative Law Judge ("ALJ") Lana Johnson. (R. 29-63). Claimant appeared with counsel and offered testimony, as did a Vocational Expert. On June 28, 2021, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-25). Claimant filed a timely request for review with the Appeals Council. On November 23, 2021, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-3). This action followed.

**B.     The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

2

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), or his capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, he is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

  **C.**  **Relevant Evidence Presented to the ALJ**

Again, Claimant seeks DIBs due to limitations from back, elbow, and bowel problems. The administrative record contains the following relevant evidence that bears on his claim:

     **1.**  **Medical Evidence**

  Claimant suffered a back injury during a motor vehicle accident in 1999, for which he underwent a lumbar discectomy in 2000. (R. 272). He "did well after surgery" until a few years prior to applying for disability benefits. (R. 353)

  On March 17, 2020, Claimant underwent a consultative examination with Therese Lucietto-Sieradzki, M.D. (R. 253-56). Claimant described a history of back, leg, and elbow pain, and complained of "excruciating pain all over his body." (R. 253). Upon exam, Claimant exhibited bilateral elbow tenderness and swelling "consistent with tenosynovitis" and mild to moderately decreased strength in both the upper and lower extremities bilaterally. (R. 254). Claimant failed the Rhomberg test with a fall to the left. (*Id*.). Dr. Lucietto-Sieradzki observed "severe difficulty" in tandem walking and walking on toes, and claimant was unable to squat and rise or hop on one foot. (*Id*.). Claimant exhibited mild difficulty getting on and off the exam table; dressing and undressing; and getting up from the chair. (R. 254-55). As for range of motion, Dr. Lucietto-Sieradzki noted mild to moderate limitations in range of motion in both the cervical and lumbar spine, the shoulders, hips, and knees. (R. 255). X-ray imaging ordered by Dr. Lucietto-Sieradzki revealed moderate disc space narrowing at L4-5 and L5-S1 and the impression was noted as degenerative disc disease at L4 through S1. (*Id*.).

  In June 2020, Claimant received care at OSF Medical Group with Advanced Practice Nurse ("APN") Kathleen Meade. (R. 272). He complained of back pain radiating bilaterally to his legs and difficulties in ambulation. (*Id*.). APN Meade assessed chronic low back pain, radiculopathy of the lumbar region, and ordered a lumbar spine MRI. (R. 275). The MRI of the lumbar spine, taken in July 2020, revealed mild to moderate disc disease and spondylosis as follows:

>L2-L3: Ligamentous and facet hypertrophy. Normal disc margin. Foramina and canal patent.
>
>L3-L4: Ligamentous and facet hypertrophy. Disc desiccation associated with minor disc bulge. Central canal patent. No significant foraminal compromise.
>
>L4-L5: Ligamentous hypertrophy. Small marginal osteophytes associated with a disc bulge and left lateral annular tear. The central canal is patent. Left foramen without significant stenosis, right foramen mildly stenotic.
>
>L5-S1: Disc space narrowing, desiccation and marginal osteophytes seen in association with a disc bulge and superimposed broad-based midline protrusion. Central canal patent. Stenosis of the superior lateral recesses bilaterally. Mild to moderate left and moderate right foraminal compromise.

(R. 276-77).

A few months later, in early September 2020, Claimant presented to neurosurgeon Noam Stadlan, M.D. for evaluation and treatment of back and leg pain. (R. 353). At that time, he was not taking any medications and complained that over-the-counter medications did not relieve his pain. (*Id*.). Dr. Stadlan observed that Claimant's range of motion in his spine and extremities to be within normal limits. (R. 355). Although strength was "difficult to assess [due to] pain," it "appear[ed] to be 5/5 with significant prompting and effort." (*Id*.). Dr. Stadlan ordered MRIs of the cervical and thoracic spine and recommended physical therapy and consultation for a possible spinal cord stimulator. (R. 358).

The MRI of the cervical spine, taken on September 29, 2020, revealed "marked right and moderate left neural foraminal stenosis at the C4-5 level," "marked right neural foraminal stenosis at the C6-7 level," and a concerning abnormal area of the spinal cord at the C5 level. (R. 342). The MRI of the thoracic spine from the same day showed a tiny disc protrusion at the T4-5 level without significant stenosis. (R. 349). In November 2020, Claimant presented for another MRI of the cervical spine, this time with contrast. (R. 314-15). That MRI ruled out the

prior concern regarding a potential lesion, but again revealed mild to moderate degenerative changes of the cervical spine. (*Id.*).

At Dr. Stadlan's recommendation, Claimant saw Dr. Matthew Co on November 9, 2020 for consultation for a spinal cord stimulator trial. (R. 323). Claimant complained of low back and neck pain, which he described as "constant." (R. 324). Upon exam, Dr. Co noted an intact but slow gait, some tenderness to palpitation, and a positive Spurling's test. (R. 328). Dr. Co reviewed Claimant's MRIs and assessed, *inter alia*, disc disease and stenosis of the cervical and lumbar spine. (R. 328-29). Dr. Co started Claimant on Gabapentin and ordered steroid injections. (R. 329). If the injections were unsuccessful, Dr. Co recommended that Claimant then consider the spinal cord stimulator. (*Id.*).

Claimant underwent steroid injections on January 5, January 26, and February 16, 2021. (R. 290-311). At a telehealth appointment on February 16, Claimant reported that the injections provided great pain relief, but that the relief wore off after a few weeks. (R. 283). At the time of the appointment, his pain was a 10/10. (*Id.*). The APN recommended another injection and noted that the spinal cord stimulator option was deferred "for now." (R. 284).

### 2. Opinions from State Agency Consultants

Dr. Victoria Dow reviewed Claimant's file on April 3, 2020 at the initial level. She assessed "Spine Disorder" as a severe medically determinable impairment, and – based on the findings of the consultative exam by Dr. Lucietto-Sieradzki and the March 2020 lumbar spine x-ray – determined that Claimant could perform medium work with some additional functional limitations. (R. 69-71).

Dr. Rohini Mendonca reviewed Claimant's file at the reconsideration level on October 20, 2020. Dr. Mendonca also relied on the March 2020 lumbar spine x-ray and Dr. Lucietto-

Sieradzki's consultative examination, but she concluded that Claimant could perform light work with some additional limitations. (R. 80-83). Although Dr. Mendonca's review includes a notation that Claimant reported he was undergoing an MRI in July 2020, (R. 78), neither Dr. Mendonca nor Dr. Dow reviewed any of the MRIs of Claimant's cervical, lumbar, or thoracic spine before issuing their opinions.

### D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of November 12, 2019. (R. 17). At step two, the ALJ determined that Claimant suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spine and tenosynovitis (tennis elbow). (*Id*.). The ALJ considered Claimant's thoracic spine disc protrusion but determined that it was not severe because it had no more than a minimal effect on Claimant's ability to perform basic work activities. (R. 17-18).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listing 1.15 (disorders of the skeletal spine), 1.16 (lumbar spinal stenosis), 1.18 (abnormality of a major joint), and 11.14 (peripheral neuropathy). (R. 18-19). Before turning to step four, the ALJ determined that Claimant has the RFC to perform light work,[2] except that he can frequently climb ramps, stairs, ladders, ropes, and scaffolds; can

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or whole range of light work, you must have the ability to substantially perform all of these activities." 20 C.F.R. §404.1567(b).

7

frequently stoop, crouch, and crawl; can frequently finger bilaterally; and is able to tolerate occasional exposure to vibration. (R. 19-23). In reaching this conclusion, the ALJ considered the opinions of Drs. Dow and Mendonca and the findings from the consultative examination. The ALJ found that Dr. Dow's conclusion that Claimant could perform medium work was "unpersuasive" because it was "inconsistent with the evidence of record," including the July 2020 lumbar spine MRI and the November 2020 cervical spine MRI. (R. 23). Instead, the ALJ concluded that the "MRI studies . . . are consistent with the ability to perform light work" and thus found that Dr. Mendonca's RFC assessment of light work was "persuasive." *Id*.

Based on this RFC, the ALJ determined at step four that Claimant could perform his past relevant work as an electronics mechanic as that job was actually performed by Claimant. (R. 23-24). Notwithstanding her step four finding, the ALJ went on to step five and concluded that a sufficient number of jobs exist in the national economy that Claimant could perform given his age, education, work experience, and RFC, including the representative light jobs of merchandise marker, collator operator, and routing clerk. (R. 24-25). As such, the ALJ found that Claimant was not disabled from his alleged onset date through the date of the decision. (R. 25).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks

omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

### III.   ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's decision to deny him benefits, arguing, among other things, that the ALJ improperly played doctor when assessing Claimant's spine MRIs, which were not reviewed by the agency physicians. Because this argument has merit, the Court finds that a remand to the SSA is warranted and will not address Claimant's additional arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments."). The Court's decision in this regard, however, is not a comment on the merits of Claimant's other arguments, which Claimant is free to assert on remand.

> **A.    The ALJ erred by assessing the MRIs of Claimant's lumbar and cervical spine that were submitted after the agency consultants issued their opinions.**

The Seventh Circuit has repeatedly held that an ALJ may not "play [ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation marks omitted); *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *Randy M. v. Kijakazi*, No. 20-cv-3912, 2022 WL 5183894, at *6 (N.D.Ill. Oct. 5, 2022) (ALJs "may not draw conclusions from evidence that is not open to layperson interpretation."); *Tobias B. v. Kijakazi*, No. 20-cv-2959, 2022 WL 4356857, at *6 (N.D.Ill. Sept. 20, 2022) ("The Seventh Circuit has been especially critical of ALJs' attempts to deduce the meaning of complex medical documents, such as MRI.") (citing cases).  Furthermore, "the ALJ must seek an additional medical opinion if there is potentially decisive evidence that postdates the state agency consultant's opinion." *Kemplen v. Saul*, 844 Fed.Appx. 883, 888 (7th Cir. 2021) (emphasis added).  In other words, the issue "comes down to whether the new information 'changed the picture so much that the ALJ erred by . . . evaluating [herself] the significance of [the subsequent] report.'" *Id*. (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).

Here, Claimant's MRIs – specifically the July 2020 lumbar spine MRI and the July 2020 and November 2020 cervical spine MRIs, all of which were submitted *after* the agency physicians' reviews – provided "potentially decisive" evidence.  To begin, the ALJ herself relied on the findings of these MRIs to find that Claimant suffers from severe degenerative disc disease of the lumbar and cervical spine, which could "reasonably be expected to cause" Claimant's alleged symptoms.  (R. 20).  And yet, when tasked with assessing the opinions of the agency

10

physicians, the ALJ simply regurgitated the findings of those MRIs and determined – without the assistance of a medical professional – that they were *not* consistent with medium work but *were* consistent with light work. This was impermissible because the ALJ, on her own, was not qualified to make this determination without the benefit of an expert opinion. *See, e.g.*, *McHenry*, 911 F.3d at 871 ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments."); *Akin*, 887 F.3d at 317-18 (holding that the ALJ impermissibly played doctor by stating that the MRI results were consistent with claimant's impairments without an expert opinion interpreting the MRI results in the record); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (the ALJ impermissibly played doctor by "summariz[ing] the results of the 2010 MRI in barely intelligible medical mumbo jumbo.").

    Moreover, it is certainly possible that a medical professional could review Claimant's lumbar and cervical spine MRIs – which, again, show anywhere from mild to *marked* degenerative changes at various levels – and find that they provide greater support for Claimant's allegations of disabling pain and limitations than did the ALJ. *See, e.g.*, *Israel v. Colvin*, 840 F.3d 432, 439-440 (7th Cir. 2016) ("Because no physician in the record has opined on whether these [MRI] results are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim."). Indeed, when the same MRIs were reviewed by Claimant's treating physicians Drs. Stadlan and Co, they assessed degenerative disc disease and ordered treatment, including medication, steroid injections, and the possibility of a spinal cord stimulator if the injections proved unsuccessful.

In this regard, this case is distinguishable from the 7th Circuit's recent opinion in *Baptist v. Kijakazi*, 74 F.4th 437 (7th Cir. 2023). There, the Court held that a new spinal MRI was not potentially decisive where it showed only mild changes from prior imaging, and, upon review by the claimant's treating physician, was "unaccompanied by any new symptoms, limitations, or treatment recommendations." *Id*. at 443. Here, there were no prior MRIs for comparison and the physicians *did* make treatment recommendations based on the findings in the MRIs.

Finally, in the face of the agency's own examining physician finding, *inter alia*, decreased strength, difficulties in performing certain tasks, and decreased range of motion, *see supra* at Section I(C)(1), this error is not harmless. This Court is simply not convinced that the ALJ would reach the same result if she submitted Claimant's MRIs for review by a medical professional. *See Lambert,* 896 F.3d at 776 ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand").

In sum: the ALJ erred by interpreting Claimant's lumbar and cervical spine MRIs without seeking a medical opinion regarding this evidence and remand is required. *See, e.g.*, *Randy M.*, 2022 WL 5183894, at *8; *Tobias B.*, 2022 WL 4356857, at *7.[3]

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment, (Dckt. #13), is granted and the Commissioner's cross-motion for summary judgment, (Dckt. #14), is denied.

---

[3] The Commissioner's contention that the ALJ need not seek another opinion from a medical expert is unsupported by the cases upon which she relies given the circumstances of this case. (*See* Dckt. #15 at 6-7 (citing *Buckhanon ex rel. J.H. v. Astrue*, 368 Fed.Appx. 674, 679 (7th Cir. 2010); *Jesus P. v. Saul*, No. 19 C 2271, 2020 WL 3268515, at *10 (N.D.Ill. June 17, 2020); *Lisa S. v. Saul*, No. 19 C 862, 2020 WL 5297028, at *1 (N.D.Ill. Sept. 4, 2020)). While those cases stand for the general propositions to which the Commissioner cites, there is no indication that they involved a factual record which – as in this case – included MRIs that were not open to interpretation by the ALJ (a layperson) and were submitted *after* the state agency physicians issued their opinions.

This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**DATE:  September 11, 2023**

                                                                                                    _____
                                                                                                    **Jeffrey I. Cummings**
                                                                                                    **United States Magistrate Judge**

!
!
!
!
!
!
!